## Dougherty *versus* Haggerty.

An agreement declared that S. " sells and delivers to the said D 100,000 feet, more or less, of hemlock timber, board measure, at the rate of fifty cents per thousand feet, board measure, the said hemlock to be taken off (a certain tract) and the said lumber is to be cut and removed just as soon as it can be ; and in consideration and in connection with the above said S. agrees to cut, haul, saw, raft and run to market the above hemlock timber at the rate of $5 per thousand, to be paid as the work progresses, and the said lumber to be run to any point on the Allegheny river to Pittsburgh." D. paid $50 upon the execution of the contract and $400 two and one-half months thereafter. After the logs were cut and before they reached the saw-mill, an employee of S., at the request of D., and in his presence, marked the initials of D. on them. When S. piled the lumber at the mill he marked the name of D. upon the piles. While it was yet lying at the mill it was levied upon and sold as the property of S. D. brought replevin against the vendee : *Held*, that there was not sufficient change of possession to vest the property in D., and the court properly instructed the jury to find for the defendant.

October 21st 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. GREEN, J., absent.

Error to the Court of Common Pleas of *Clarion county :* Of October and November Term 1879, No. 117.

This was an action of replevin brought by Thomas Dougherty against James Haggerty on the 14th of April 1877, for 120,000 feet of hemlock lumber. About 80,000 feet worth from $8 to $10 per 1000, of the property was replevined at the mouth of the Clarion river, and retained by the defendant, Haggerty, upon giving property bond.

In the year 1874, James A. McClelland, Samuel T. Reynolds and S. T. Dougherty, became the owners, by purchase and conveyance, from L. F. Flowers and wife, of the undivided three-fourths of 439 acres of land, being part of Holland warrant 2775, in Spring Creek township, Elk county, Pennsylvania. It appeared from an article of agreement between S. T. Reynolds and S. T. Dougherty, dated the 16th of January 1875, given in evidence on trial, that said Dougherty and Reynolds had been engaged as copartners, under the name and style of Dougherty & Reynolds, in manufacturing lumber. On that date, S. T. Reynolds sold and transferred by said articles of agreement, to S. T. Dougherty, all

[Dougherty *v.* Haggerty.]

his interest in the partnership assets; also his interest in the 439-acre tract. And also a one-fourth interest in a 14-acre tract, on which was erected a saw-mill and other buildings, purchased March 3d 1874, by article of agreement from L. F. and F. M. Powers. On the 1st of August 1876, an agreement was made between S. T. Dougherty and his father, the plaintiff in error, as follows: " An article of agreement made by and between S. T. Dougherty, of Elk county, Pa., and Thomas Dougherty, of Clarion county, Pa., witnesseth, that the said S. T. Dougherty sells and delivers to the said Thomas Dougherty, one hundred thousand (100,000) feet, more or less, of hemlock lumber, board measure, at the rate of fifty cents per 1000 feet, board measure. The said hemlock is to be taken off a lot of land lying in Spring Creek township, Elk county, Pa., and bought of L. Powers by S. T. Dougherty and James McClelland. And the said lumber is to be cut and removed just as soon as it can be; and in consideration and connection with the above, S. T. Dougherty agrees to cut, haul, saw, raft and run to market the hemlock timber at the rate of $5 per 1000, to be paid as the work progresses, and said lumber to be run to any point on the Allegheny to Pittsburgh, Pa."

Endorsed on this contract were receipts by S. T. Dougherty for $50, on the 1st of August 1876, and of $400, on the 14th of October 1876.

The owners of the tract containing this 439 acres alluded to in the above contract as that from which the lumber was to be taken, were S. T. Dougherty, who owned one undivided half, James McClelland one-fourth, and C. C. Faries and the heirs of one Graphies jointly the other fourth. S. T. Dougherty was the owner of at least one-fourth of the mill and fourteen-acre tract. S. T. Dougherty, under his contract in the fall of 1876, went on and cut logs on the 439-acre tract, and run them to the saw-mill on the fourteen-acre tract, where they were manufactured by a sawyer in his employ to whom he furnished the sizes. After the lumber was manufactured it was piled up at the mill. After they had been thus sawed and piled ready to raft an execution was issued on a judgment of Powers *v.* S. T. Dougherty, S. T. Reynolds and James McClelland, and the boards were levied on and sold to James Haggerty, defendant, who employed hands, rafted in and run them to the mouth of the Clarion river, where they were replevined by the plaintiff.

Verdict for defendant, and after judgment plaintiff took this writ, and alleged that the court erred as follows:

1. In the answer to the plaintiff's fourth point: If J. A. McClelland gave S. T. Dougherty a license to cut timber off their joint lands to reimburse himself for money paid by Dougherty for McClelland, and the lumber in dispute was cut in accordance with such license, the defendant would acquire no right of property to the lumber in dispute through J. A. McClelland.

[Dougherty v. Haggerty.]

Ans. "We do not see the applicability of this point and therefford decline to answer it."

2. In their answer to plaintiff's fifth point: If S. T. Dougherty and. J. A. McClelland had exclusive possession of the land and S. T. Dougherty cut the timber from the stump, hauled and manufactured it as a jobber for T. Dougherty in good faith under contract of 1st August 1876, and the same was stamped and marked with the mark of T. Dougherty, and the defendant at sheriff's sale had notice that the lumber belonged to T. Dougherty, if the jury should find the facts as stated in plaintiff's third point, their verdict should be for the plaintiff.

The third point referred to in this point is as follows: That if McClelland, Dougherty and Reynolds used the land or timber on warrant No. 2775 as partnership property, and so treated it, and the same was paid or to be paid for out of partnership funds, as between them the standing timber would be as to their interest therein, subject to sale by any of the partners for the payment of partnership obligations or partnership debts.

Ans. "Refused."

3. In their answer to the defendant's third point: If S. T. Dougherty contracted with the plaintiff, his father, to cut, manufacture and deliver the lumber in controversy from land owned by himself and another or others, the marking the logs or lumber while he was still engaged in performance of his contract and in control of lumber before the same had reached place of delivery, would not vest title in plaintiff so as to prevent execution-creditors levying on the same and under such facts plaintiff could not recover.

Ans. "Affirmed."

4. In their answer to defendant's sixth point: That under all the evidence in this case plaintiff cannot recover.

Ans. "Affirmed."

5. In instructing the jury to find a verdict for the defendant.

*Wilson & Jenks,* for plaintiff in error.—The doctrine that possession must be delivered to constitute a valid sale as to creditors, as to chattels real at best can only be complied with by the purchaser entering upon the chattel. When Thomas Dougherty, by his jobber entered and cut the timber, that was sufficient to constitute a delivery. When he himself went to the logs and had them stamped with his stamp, T. D., this was exercising his ownership. When, after the lumber was sawed, he marked the piles of boards, it was a continued assertion of such ownership, and that branch of the doctrine that the connection of the former owner must be entirely severed from the chattel, does not hold as to chattels real, otherwise in many instances no legal sale could be made as to such property. The owner of the land may sell all or a portion of the

timber on his land, and yet the property so sold would not be subject to sale on an execution against the vendor, because he was still found in possession of the land.

*W. L. Corbett,* for defendant in error.—The contract was simply a sale of hemlock lumber when sawed and run to market at any point on the Allegheny river. Such contract was a sale at the place it was to be delivered, at $5.50 per thousand, and until run and delivered, no title to the same vested in plaintiff, Thomas Dougherty. As long as the contract was being performed, there could be no transfer by delivery of the thing, the subject of performance. The attempt to make a constructive or symbolical delivery, by marking the logs and piles of lumber, whilst the vendor was still engaged in the performance of the contract, and before the lumber had reached the place of delivery, could in no way affect the title, and could have no effect as to execution-creditors of the vendor : Garman *v.* Cooper & Co., 22 P. F. Smith 32 ; Caldwell *v.* Fisher, 2 W. N. C. 383. In this case, had there been a delivery to plaintiff by his vendor, S. T. Dougherty, still there could be no recovery in this action. S. T. Dougherty was only a tenant in common with others of the land from which timber was taken, manufactured into lumber and sold to plaintiff. And his sale to plaintiff and severance of timber from land did not divest the title of his co-tenants. One tenant in common cannot maintain replevin in his own name, but must join with his co-tenants as plaintiffs in the action. Possession is not sufficient title to maintain replevin. There must be property in the plaintiff, either general or special : Tr. & H. Pract., vol. 2, p. 144 ; Waterman *v.* Robininson, 5 Mass. 303 ; Ludden *v.* Leavitt, 9 Id. 104 ; Perley *v.* Foster, Id. 112 ; Warren *v.* Leland, Id. 265 ; Lester *v.* McDowell. 6 Harris 91.

Mr. Justice MERCUR delivered the opinion of the court. November 17th 1879.

This was an action of replevin for a quantity of hemlock lumber. The plaintiff claimed the lumber under a written agreement made between him and his son, Samuel T. Dougherty. The defendant purchased it at sheriff's sale on an execution against Samuel. The court being of the opinion that there was not sufficient change of possession to vest the property in the plaintiff, directed the jury to find for the defendant. This constitutes the main cause of complaint.

The evidence shows that Samuel owned the undivided one-half of a tract of timber land containing 439 acres, situate in Spring Creek township, Elk county. He also owned an interest in a smaller lot, with a saw-mill thereon. The plaintiff owned no interest in either the lands or mill and had no possession thereof.

[Dougherty v. Haggerty.]

The agreement declares that Samuel " sells and delivers to the said Thomas Dougherty one hundred thousand feet, more or less, of hemlock timber, board measure, at the rate of fifty cents per thousand feet, board measure; the said hemlock is to be taken off" (the tract aforesaid) " and the said lumber is to be cut and removed just as soon as it can be; and in consideration and in connection with the above said Samuel agrees to cut, haul, saw, raft, and run to market the above hemlock timber at the rate of five dollars per thousand, to be paid as the work progresses, and said lumber to be run to any point on the Allegheny to Pittsburgh."

Thus the agreement specified no particular trees. None were designated or marked by the parties. No such possession was taken as the nature of the property would have admitted of. Samuel could cut, anywhere on the tract, a sufficient number to make the stipulated quantity of lumber.

The price to be paid per thousand in the tree was not entirely severed from the other part of the agreement. It proceeded to declare " in consideration and in connection" therewith, Samuel was to perform all the work and labor required to convert the trees into lumber, and to run the latter to market. It was substantially an agreement to deliver to the plaintiff, at some market on the river, the quantity of lumber specified, and that it might be cut anywhere on the tract mentioned. He was to pay five dollars and fifty cents per thousand for it delivered at a river market. Fifty cents per thousand feet was for stumpage, and the residue for manufacturing and delivering the lumber.

Both sums were blended together and formed a part of one agreement. The plaintiff did not agree to perform any part of the work in cutting the trees or in manufacturing the lumber, and he did not. He was not present when the trees were cut. He appears to have paid $50 on the execution of the contract, and $400 two and a half months thereafter. After the logs were cut, and before they reached the mill, an employee of Samuel, at the request of the plaintiff, and in his presence, marked the initials of the latter on them. The plaintiff was once at the mill while they were being sawed; but he gave no directions in regard to the sawing. He took no separate possession of the logs and no possession of the lumber. He did not waive nor change the place of delivery named in the agreement. When Samuel piled the lumber at his mill he marked the name of the plaintiff on the piles. The latter was not present, and this worked no actual or legal change in the possession. It indicated a present intention to deliver that specific lumber at some future time, to the plaintiff; but the right of property did not thereby pass. Notwithstanding these marks, Samuel might have substituted other lumber cut from any other trees on the same tract, and it would have been a full compliance with his agreement. Although the plaintiff's name was thus marked on the piles

[Dougherty *v.* Haggerty.]

at the mill, yet the lumber was still to be rafted and run to market by Samuel before the plaintiff was to take possession thereof. While it was yet lying at the mill, and before the plaintiff had accepted it, or it had reached the market where Samuel was to deliver it, it was levied on and sold as the property of the latter and bought by the defendant. The learned judge was right in holding the plaintiff had not such a possession as to prevent the lumber being sold on execution by a creditor of Samuel. This view being decisive of the case, it is not necessary to consider the other assignments.

Judgment affirmed.