# I. D. Doverspike, Appellant, v. Charles Jewart.

*Sales—Vendor and vendee—Delivery—Title to logs in raft.*

Where one engaged in business of cutting and selling logs from his own land agreed to deliver to another two rafts of logs at the mouth of a specified creek and the amount of timber in each raft was undetermined, most of it mainly uncut and none of it in the stream, title to the same does not pass to the vendee except upon delivery at the place specified in the agreement.

*Sales—Payment—Collateral security.*

Where in such case the vendor sold said rafts, one of them being at the place of delivery but undelivered, the other stranded on rocks some miles up the stream, to one of his creditors, in consideration of an allowance of a credit of the full value of the timber on a judgment note, for a bona fide debt, without notice of the prior agreement for sale, the title of such vendee is good and the rule governing the transfer of personal property, as collateral security, for an antecedent debt cannot possibly apply.

Argued May 12, 1896. Appeal, No. 32, May T., 1896, by plaintiff, from judgment of C. P. Armstrong Co., June T., 1894, No. 200, for defendant. Before RICE, P. J., WILLARD, WICKHAM, REEDER, ORLADY and SMITH, JJ. Affirmed.

Replevin for two rafts of logs. Value of $225. Verdict for defendant.

The facts are stated in the opinion of the Superior Court as follows :

About the 18th of November, 1893, I. D. Doverspike, the appellant, had some dealings with William T. Jewart, as to the purchase of certain timber. Jewart, it appears, was engaged in the business of cutting and selling logs from his own land. The agreement as revealed by the appellant's own testimony, which, with the other evidence offered in his behalf must be accepted as true, was, in substance, that Jewart was to deliver to the appellant three rafts, one of red oak, one of white oak,

314      DOVERSPIKE, Appellant, *v.* JEWART.

Statement of Facts—Opinion of the Court.    [2 Super. Ct.

and one of hemlock, at the mouth of Mahoning creek, in the spring of 1894. As to the hemlock raft, it is not embraced in this controversy, and therefore does not concern us further. The amount of timber to be in each raft was undetermined. The consideration was to be the market price per foot at the time and place of delivery. The timber was then mainly uncut and none of it in the stream. It cannot be contended, on the evidence, that the appellant bought standing timber, or at any time cut and lying in the woods. He was to get rafted timber, at market rates, at the mouth of the Mahoning, and was not bound to accept anything else or delivery elsewhere.

In March, 1894, the red oak and white oak rafts were started down the stream. One of them reached the mouth of the Mahoning safely; the other was stranded on some rocks about eight miles farther up. About April 6, 1894, W. T. Jewart sold both rafts to his father, Charles Jewart, the consideration being an allowance of a credit, amounting to the full value of the timber on a judgment note for a bona fide debt, held by the father against the son. It appears from the evidence that Charles Jewart knew nothing of the agreement between his son and the appellant. He (Charles Jewart) took possession of both rafts, expended some money on them and held the possession until it was taken from him by the sheriff by virtue of the writ of replevin.

The defendant presented the following point: "Under all the evidence in this case the verdict of the jury must be for the defendant. Affirmed." [1]

*Error assigned* was (1) answer to defendant's point.

*W. D. Patton* and *R. A. McCullough*, with him *Austin Clark*, for appellant, cited Croft v. Jennings, 173 Pa. 221; Wells on Replevin, sec. 363.

*M. F. Leason*, for appellee, cited Dougherty v. Haggerty, 96 Pa. 515; Reitz's App., 64 Pa. 165; Haldeman v. Duncan, 51 Pa. 70.

OPINION BY WICKHAM, J., July 16, 1896 (after stating the facts as above set forth):

Looking at all the evidence, there can be no reasonable pre-

tense for contending that the appellant ever received actual or even symbolical delivery of either of the rafts. His name or mark was not on the logs ; no sign was put up to indicate that the ownership was not in W. T. Jewart. No one representing the appellant was ever in possession, and we may safely assume that if he had not paid W. T. Jewart, who seems to be impecunious, in advance by goods from his store and otherwise, it would have been hard to convince him that the stranded and broken raft, eight miles from the place of delivery, and the other not yet turned over to him, were his property and lying in the creek at his risk. Had the logs been carried away by flood at any time before Charles Jewart's purchase, it is not likely that the appellant would have been willing to shoulder the loss ; nor under the circumstances do we think he should. The appellant does not undertake to say when or where the passing of the title took place. Did each log become the appellant's as soon as the ax struck the tree, or when the tree was felled, or when the log was hauled to the creek, or when it entered the water, or when in transit, or the moment it reached the mouth of the creek ? The appellant in his redirect testimony tried once to shift his ground and, by suggestion, to convey the idea that he was to have possession, somewhere in the creek above its mouth ; but on further cross-examination he came back to his original statement as to the place of delivery. We do not think that simply running the timber to the point designated changed either possession or title. Something further had to be done, which never was done. It would be unreasonable to hold that, regardless of the height of the water in the stream, threatening weather and the like, the vendor could claim a delivery by merely guiding the raft to the mouth of the creek, tying it up and then without notice to the appellant (and none was given in this case) deserting it. The appellant, himself, no doubt would be the first to deny any delivery, if this course had been pursued and the logs were swept away and lost.

We have not overlooked the alleged declarations of W. T. Jewart to third persons and to the appellant's clerk, regarding the ownership of the timber. They perhaps amounted to little more than statements that he had agreed to sell to the appellant, and expressed the popular idea of the effect of such an agreement on the title to personal property. They are to be given

due weight, but they cannot be allowed to overthrow incontestable facts and the appellant's own story as to the contract.

But conceding that the title as between W. T. Jewart and the appellant had passed to the latter, still he would have no right, never having had possession, to take the timber from one who purchased it for a valuable consideration and in good faith. It is true an attack is made in the appellant's printed argument on the bona fides of the transaction between the Jewarts, but it is not sustained by anything in the evidence. Admitting that W. T. Jewart was dishonest in his conduct towards the appellant, this does not change the legal status of the case. Had Charles Jewart issued execution and sold the rafts thereon, it would have been the duty of the court below, on the evidence before us, to set aside a verdict if found against him on an issue involving the validity of his judgment. Mere suspicion is not proof, nor can it be allowed to take its place in a legal proceeding.

The decision in Dougherty v. Haggerty, 96 Pa. 515, in which the circumstances were very similar to those of the case at bar, we think presents the rule which should govern here.

The allegation made in the appellant's argument that Charles Jewart was not a purchaser for value, because he took the timber in payment of an antecedent debt, needs no discussion. Had he accepted the rafts as collateral security for his debt, and not as a pro tanto satisfaction thereof, the appellant's allegation might be correct. As the matter stands, however, it is untenable. The rule requiring change of possession to accompany a sale of personal property is for the benefit of creditors as well as purchasers, and it is immaterial whether a creditor secures the payment of his debt through an execution levied on the debtor's goods or with the consent of the latter acquires in a less roundabout and expensive way property to satisfy his claim.

The learned judge of the court below committed no error in instructing the jury to find in favor of the defendant.

Judgment affirmed.